IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEFFREY COLEMAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:21cv00387 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| PHILLIP WHITE, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Jeffrey Coleman, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Defendant Phillip White ("Warden White") and other medical personnel at Augusta Correctional Center. This matter is before the court on Warden White' motion to dismiss.[1] Having reviewed the pleadings, the court concludes that Coleman's allegations fail to state a claim against Warden White and will grant his motion to dismiss.

I.

Coleman alleges that on June 21, 2021, while housed at Augusta Correctional Center ("Augusta"), he awoke on the floor after fainting and was experiencing "extreme pain" in his chest, back, and hip. (Compl. at 3 [ECF No. 1].) Coleman was taken to Augusta's medical department and then by ambulance to a hospital. Coleman states that he was examined by the emergency room doctor, given pain medication, and released from the hospital the same day, with three prescriptions. Coleman claims that while being transported back to Augusta, his pain medication "wore off" and when he arrived at Augusta's medical department, he was in

---

[1] Dr. Smith and Nurse Burchett have filed their own motion to dismiss (ECF No. 34), which the court will address separately.

"extreme pain." (*Id.* at 3–4.) Coleman claims that over the next few days, he filed multiple emergency grievances requesting medical treatment as a result of his pain.

Coleman states that on June 24, 2021 (three days after his visit to the hospital), he "informed" defendant Warden White that he had been in pain since June 21, but White failed to order Augusta's doctor to provide the medical treatment (medications) prescribed by the emergency room doctor. (Compl. at 6.)

The next day, Coleman claims that he was called to the medical department and a nurse "interviewed" him and gave him "muscle rub" until Augusta's doctor could see him. (Aff. of Jeffrey Coleman ¶ 39, Nov. 22, 2021 [ECF No. 37-1].) Coleman states that the muscle rub had "no effect whatsoever on the pain" in his back, chest, or hip. (Compl. at 7.)

Coleman wrote his § 1983 complaint on June 26, 2021, five days after his visit to the hospital and two days after he allegedly informed Warden White of his situation. Coleman stated that, at the time of his complaint, he was still in pain and was experiencing "tingling in his left foot, right arm, and lips." (*Id.*) He claims that Warden White was "aware" that he was in pain and that he had been diagnosed and prescribed treatment by the emergency department doctor, but that White "knowingly and intentionally den[ied] and/or delay[ed]" Coleman's pain treatment. (*Id.*)

In an affidavit attached to his complaint, Coleman attests that he "initiated" exhaustion of administrative remedies against Warden White by writing a "complaint" on June 25, 2021 (the day before he filed his § 1983 complaint), but that he had not yet received a receipt for that complaint. (Coleman Aff. ¶ 41.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But legal conclusions in the guise of factual allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Coleman argues that Warden White was deliberately indifferent to his serious medical needs because White was "informed" that Coleman was in pain, but he failed to order Augusta's doctor to provide the medication prescribed by the emergency room doctor. After reviewing the pleadings, the court concludes that Coleman's allegations against Warden White fail to state a cognizable Eighth Amendment claim.

To establish an Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). A claim amounting to a mere disagreement between an inmate and medical personnel regarding

diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In the context of a claim for deliberate indifference to medical needs, prison officials who are untrained in medicine are entitled to rely on the judgment of medical professionals. *See Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) ("'If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (alteration in original)).

Coleman does not allege that Warden White was a trained medical provider or that White was a direct provider of Coleman's medical care. Instead, Coleman bases his claim against Warden White on a theory of supervisory liability. It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

In order to prevail on a claim for supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was

> so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the subordinate's conduct poses an unreasonable risk of harm of constitutional injury. *Slakan v. Porter*, 737 F.2d 368, 373–74 (4th Cir. 1984). A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Coleman complains that Warden White did not direct Augusta's medical staff to provide Coleman with the medications prescribed by the emergency room doctor. Coleman claims that Warden White leaned about Coleman's visit to the hospital and continued pain on June 24. The very next day, Coleman was called to Augusta's medical department, where he was interviewed by a nurse and prescribed a muscle rub until Augusta's doctor could see him. The next day, Coleman filed this § 1983 complaint.

Even if Coleman's allegations could show that Warden White had actual or constructive knowledge that Augusta's medical staff did not provide adequate medical treatment, Coleman has not shown that the medical staff's conduct posed "a pervasive and unreasonable risk" of constitutional injury to Coleman. Moreover, the day after Warden White allegedly learned of Coleman's pain, Coleman was called to the medical department and provided medical treatment by a nurse until the doctor was able to see him. That the muscle rub was not effective on Coleman's pain cannot be blamed on Warden White, nor does it establish that White was deliberately indifferent to Coleman's medical needs. Warden White was entitled to rely on the medical professional's judgment and, further, such a "disagreement between an inmate and medical staff regarding the proper course of treatment" does not give rise to a claim for deliberate indifference. *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 733 (4th Cir. 2015) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)). As such, Coleman has not alleged a cognizable Eighth Amendment claim against Warden White.

## IV.

In any event, it is clear from the face of Coleman's complaint that he did not exhaust available administrative remedies before filing this action. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is "mandatory," and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement "serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). First, the exhaustion requirement

"protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* (cleaned up). Second, "exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* In recognition of these purposes, the United States Supreme Court has held that the PLRA requires "proper exhaustion"—that is, exhaustion must be done in "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90, 93. The relevant procedural requirements for exhaustion "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218.

Here, Coleman admits in his affidavit attached to his complaint that he did not complete all steps of the exhaustion process prior to filing this action.[2] (*See* Coleman Aff. ¶ 41.) In fact, Coleman admits that he had not even received a receipt for his informal complaint against Warden White at the time he filed his complaint. (*Id.*) Exhaustion must be accomplished *prior* to filing suit. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (stating that under the PLRA, a prisoner must exhaust available administrative remedies "prior to filing suit in federal court"). "The plain language of that statute makes exhaustion a precondition to filing an action in federal court. The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted); *see also Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016)

---

[2] Although failure to exhaust is ordinarily an affirmative defense and an inmate is not required to plead that he has exhausted administrative remedies, an action may be dismissed upon the pleadings where failure to exhaust is apparent from the face of the complaint. *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 682 (4th Cir. 2005).

("Exhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint.").

Coleman's failure to exhaust is not excused by the fact that he filed suit prior to completing the exhaustion process in order to obtain a preliminary injunction.[3] As the Supreme Court has observed, the PLRA does not permit any exception to the exhaustion requirement for "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Specifically, courts have recognized that an inmate must still exhaust administrative remedies before seeking a preliminary injunction. *See Shouse v. Ray*, No. 7:10cv61, 2010 U.S. Dist. LEXIS 103234, at *2–3 (W.D. Va. Sept. 28, 2010) (finding that inmate had not shown that he was likely to succeed on the merits when there was dispute as to whether he had exhausted administrative remedies); *Watkins v. Guilford Cnty. Sheriff's Dep't*, No. 1:06cv995, 2007 U.S. Dist. LEXIS 78264, at *14 (M.D.N.C. May 10, 2007) ("[A] plaintiff's failure to exhaust his administrative remedies bars relief on a motion for a preliminary injunction."). Moreover, Coleman has not alleged any facts showing that administrative remedies were not available to him. *See Moore*, 517 F.3d at 725 ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). Because Coleman admittedly failed to exhaust available administrative remedies prior to filing this action, his claims against Warden White are barred under the PLRA.

---

[3] The court denied Coleman's motion seeking preliminary injunctive relief on February 28, 2022. (ECF No. 38.)

## V.

For the reasons stated, the court will grant the Warden White's motion to dismiss.

The clerk is directed to send copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 19th day of August, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE