IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEFFREY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00387 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KYLE A. SMITH, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Jeffrey Coleman, a Virginia inmate proceeding *pro se*, filed this civil action filed under 42 U.S.C. § 1983. This matter is before the court on Defendants Dr. Smith and Nurse Burchett's motion to dismiss.[1] Having reviewed the pleadings and other pertinent documents,[2] the court concludes that Coleman's allegations fail to state a claim against the defendants and that Coleman failed to exhaust available administrative remedies before filing this action. Therefore, the court will grant the defendants' motion to dismiss.

I.

Coleman alleges that on June 21, 2021, at Augusta Correctional Center ("Augusta"), he awoke on the floor after fainting and was experiencing "extreme pain" in his chest, back, and hip. (Compl. at 3 [ECF No. 1].) Coleman was taken to Augusta's medical department and then by ambulance to a hospital. Coleman states that he was examined by the emergency room

---

[1] By Memorandum Opinion and Order entered August 19, 2022, the court granted Defendant Warden White's motion to dismiss the claims against him. (ECF Nos. 40 & 41.)

[2] A court may consider official public records, documents central to a plaintiff's claims, and documents sufficiently referred to in the complaint without converting a Rule 12(b)(6) motion into one for summary judgment, so long as the authenticity of these documents is not disputed. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006). The authenticity of any of the documents referenced by the court is not in dispute.

("ER") doctor, given pain medication, and released from the hospital the same day, with three prescriptions. Hospital medical records show that the ER doctor prescribed naproxen,[3] diazepam,[4] and methylprednisolone.[5] (*See* ECF No. 9-1, at 7.) Coleman states that he was already taking naproxen prior to the hospital visit and continued to receive it after the hospital visit. (Aff. of Jeffrey Coleman ¶ 27, Aug. 10, 2021 [ECF No. 9].) Coleman claims that while being transported back to Augusta, his pain medication "wore off" and when he arrived at Augusta's medical department, he was in "extreme pain." (Compl. at 3−4.) Coleman states that he asked to stay in the medical department so that he could lie down because he was in pain and he had been up all night. Coleman alleges that defendant Nurse Burchett told him that, "When I go see the doctor, I have to wait. So you'll have to wait too." (*Id.* at 4.) Coleman claims that Nurse Burchett looked at his prescription list from the hospital and stated, "Just so you know, you won't be getting this either." (*Id.*) Coleman asserts that he asked for an emergency grievance form to try to get his pain treated, but Nurse Burchett refused to give him one. He further alleges that when he attempted to get an emergency grievance form himself, Nurse Burchett told the officer at the medical desk not to let Coleman out of the

---

[3] Naproxen is used to relieve pain and to reduce pain, swelling, and joint stiffness. *See* WebMD, Naproxen Tablet, https://www.webmd.com/drugs/2/drug-5173-1289/naproxen-oral/naproxen-oral/details (last visited Aug. 24, 2022). It is a nonsteroidal anti-inflammatory and "works by blocking your body's production of certain natural substances that cause inflammation." *Id.*

[4] Diazepam is used to treat anxiety, seizures, and muscle spasms. *See* WebMD, Diazepam, https://www.webmd.com/drugs/2/drug-6306/diazepam-oral/details (last visited Aug. 24, 2022). This medication works by "calming the brain and nerves." *Id.*

[5] Methylprednisolone is used to treat conditions such as arthritis, blood disorders, severe allergic reactions, skin/kidney/intestinal/lung diseases, and immune system disorders. *See* WebMD, Methylprednisolone, https://www.webmd.com/drugs/2/drug-6470/methylprednisolone-oral/details (last visited Aug. 24, 2022). It decreases the immune system's response to various diseases to "reduce symptoms such as swelling, pain, and allergic-type reactions." *Id.*

medical department until he signed a refusal-of-treatment form. When Coleman told Nurse Burchett that he would not sign anything other than a § 1983 form, he claims that she accused him of threatening her and "tried" to get him put in segregation.[6] (*Id.*) Coleman states that defendant Dr. Smith was present during this "exchange." (*Id.* at 5.)

Coleman alleges that, in response to Nurse Burchett's accusation that Coleman had threatened her, a sergeant came to the medical department, conferred with Nurse Burchett, and allowed Coleman to go to his housing unit. Coleman states that he left the medical department with security staff's permission and that he never refused treatment. Coleman claims that he waited all day, in pain, for medical treatment or a response to his emergency grievance. That night, Coleman received a response stating that he had "refused to stay in [the] medical unit until the doctor reviewed [his] orders," and that he should "submit a request for further orders/questions." (Aff. of Jeffrey Coleman Aff. ¶ 30, June 26, 2021 [ECF No. 1-3].) Coleman states that he immediately submitted a request and never received a response. Coleman wrote another emergency grievance that night; the response stated that he had left the medical unit earlier that day on his "own accord before being seen," and that the doctor at Augusta would "decide[] what medications and treatments are continued at the facility [after he was] discharged" from the hospital. (*Id.* ¶ 32.)

Coleman alleges that on June 25, 2021, he was called to the medical department where a nurse "interviewed" him and gave him "muscle rub until the doctor [could] see [him]." (*Id.* ¶ 39.) Coleman states that the muscle rub had "no effect whatsoever on the pain" in his back, chest, or hip. (*Id.* ¶ 43.)

---

[6] The court notes that Coleman does not assert that he *was* placed in segregation.

Coleman wrote his § 1983 complaint on June 26, 2021, five days after his visit to the hospital. He complained that, at the time of his complaint, he was still in pain and was experiencing tingling in his left foot, right arm, and lips. He alleges that the treatment ordered by the ER doctor had not been administered and that he had not been examined by a doctor at Augusta. He claims that defendants Nurse Burchett and Dr. Smith were aware that he was in pain and had been diagnosed and prescribed treatment by the ER doctor. He argues that the defendants "knowingly and intentionally den[ied] and/or delay[ed]" his pain treatment. (Compl. at 7.)

In an affidavit attached to his complaint, Coleman attests that, at the time of the complaint, he had "initiated" exhaustion of administrative remedies against Dr. Smith and Nurse Burchett by filing an informal complaint. (Coleman Aff. ¶ 41 [ECF No. 1-3].) He also stated that it would "take approximately 4 months [from the time of the complaint] to totally exhaust [his] grievances . . . ." (*Id.* ¶ 42.)

After filing his complaint, Coleman submitted an affidavit stating that on June 27, 2021, the day after he submitted his complaint (and the day before the complaint is postmarked), Dr. Smith prescribed him methylprednisolone, the same medication that the ER doctor had recommended. (Coleman Aff. ¶ 21 [ECF No. 9].) He further stated that on July 21, 2021, Dr.

Smith saw him for the first time since his hospital visit a month earlier and, after examination, prescribed Elavil[7] and Tylenol[8] for Coleman's pain and ordered x-rays of Coleman's spine.

The defendants filed a motion to dismiss, arguing that Coleman's allegations fail to state a cognizable § 1983 claim against either of them and that it is clear from the face of his complaint that Coleman failed to exhaust available administrative remedies prior to filing this action.

Several of Coleman's grievance records have been filed in this case. In an informal complaint dated June 22, 2021, Coleman complained that, after his ER visit, he informed Nurse Burchett and others that he was in "extreme pain," that Nurse Burchett told him that he "would not be getting the treatment," and that he was still in pain. (ECF No. 21-1 at 18.) A response dated June 28, 2021, indicated that Coleman had been "seen and treated" on June 25. (*Id.*) Coleman filed a regular grievance on these issues on July 1, 2021, five days after he filed his § 1983 complaint. The grievance was deemed unfounded because Coleman's "situation and [ER] documentation were discussed and reviewed by Dr. Smith," Dr. Smith had prescribed medication "as deemed appropriate," and Coleman was "being followed" by medical staff at Augusta. The response also advised Coleman to file a sick-call request if he experienced "new or worsening symptoms." (*Id.*) Coleman appealed and the grievance

---

[7] Elavil is a medication used to treat mental/mood problems and may help improve mood and feelings of well-being, relieve anxiety and tension, help a person sleep better, and increase energy levels. *See* WebMD, Elavil Tablet, https://www.webmd.com/drugs/2/drug-1807/elavil-oral/details (last visited Aug. 24, 2022). According to Coleman, the medication also has "an 'off label' effect of easing nerve pain." (Aff. of Jeffrey Coleman ¶ 5, Nov. 22, 2021 [ECF No. 37-1].)

[8] Coleman states that he had advised Dr. Smith that the naproxen was not helping his pain and, therefore, Dr. Smith prescribed Tylenol. (Coleman Aff. ¶ 27–28 [ECF No. 9].) It is unclear whether Coleman continued to take naproxen as well.

response was upheld, noting that "recommendations from the offsite doctor may be changed at the clinical discretion of the institutional provider" and that on June 25, 2021, Coleman had "received the treatment recommended by" Augusta's doctor. (*Id.* at 15.)

In another informal complaint dated June 22, 2021, Coleman complained that Dr. Smith was "inflicting wanton and unnecessary pain" on him "by refusing to administer the pain treatment ordered by" the ER doctor the previous night. (ECF No. 21-1 at 14.) In a response dated June 28, a nurse stated that Dr. Smith reviewed Coleman's ER records and ordered medication. Coleman filed a regular grievance on July 1, 2021, five days after he filed his § 1983 complaint, complaining about Dr. Smith and seeking "the treatment ordered by the ER doctor" as well as damages "from [Dr.] Smith for violating [Coleman's] rights." (*Id.* at 13.) The grievance was deemed unfounded because Coleman's "situation and [ER] documentation were discussed and reviewed by Dr. Smith," Dr. Smith had prescribed mediation "as deemed appropriate," and Coleman was "being followed" by medical staff at Augusta. Coleman appealed and the grievance response was upheld.

Coleman filed another related informal complaint on July 14, 2021, nearly three weeks after filing this § 1983 action, complaining that he had been referred to Dr. Smith for back pain after a sick-call visit on June 25, 2021, but had yet to see the doctor. (*See id.* at 21.) Coleman also complained that he was experiencing pain and numbness. Coleman followed the informal complaint with a regular grievance on July 23. It appears that Coleman did not appeal the grievance response.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Coleman alleges that Dr. Smith and Nurse Burchett denied him adequate medical treatment after his visit to the hospital because they did not follow the recommendations of the ER doctor. To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A claim amounting to no more than a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many

acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Intentional delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). But the Fourth Circuit has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166−67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). Substantial harm may also be "'a lifelong handicap or permanent loss.'" *Coppage v. Mann*, 906

F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

Coleman went to the hospital on June 21, 2021, and his pain relevant to this action began the same day. The ER doctor prescribed three medications: naproxen, diazepam, and methylprednisolone. Coleman was already taking naproxen before going to the hospital and he continued to take it afterward. Four days after being discharged from the hospital, a nurse interviewed him and gave him a muscle rub. Six days after being discharged from the hospital, Dr. Smith prescribed methylprednisolone to him. One month after his discharge from the hospital, Dr. Smith examined him, prescribed Elavil and Tylenol to him, and ordered x-rays. It is clear from the record that Coleman received extensive medical treatment related to the claims in this action. He may have disagreed with the course of treatment or preferred the course of treatment recommended by the ER doctor, but his allegations do not show that the defendants were deliberately indifferent to his medical needs.[9] Further, Coleman has not shown that any delay in treatment caused him substantial harm as he continued to receive naproxen throughout the relevant time period, was given muscle rub four days after the hospital visit, was given methylprednisolone six days after the hospital visit, and was given Elavil and Tylenol one month after the hospital visit. The Eighth Amendment does not require

---

[9] The court notes that there is no allegation that Nurse Burchett would have been able to provide Coleman with the medications recommended by the ER doctor without an order from Dr. Smith. Although Coleman's allegations, if true, may show that Nurse Burchett's bedside manner leaves something to be desired, he has not alleged facts for the court to conclude that she was responsible for any alleged denial or delay in him receiving medical treatment.

"prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." *Jamison v. Kincaid*, Civil Action No. 3:19CV19, 2021 U.S. Dist. LEXIS 176137, at *44−46 (E.D. Va. Sep. 15, 2021) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *See Brown v. Harris*, 240 F.3d 383, 389−90 (4th Cir. 2001). Because the reasonableness of any such response usually calls for a medical judgment, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes*, 95 F.3d at 592; *see Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks omitted))). Accordingly, the court concludes that Coleman's allegations fail to state a cognizable Eighth Amendment claim against Dr. Smith or Nurse Burchett.

## IV.

Even if Coleman's allegations did state a cognizable claim against the defendants, it is nevertheless clear from the face of Coleman's complaint (and further supported by other documents the parties have submitted) that Coleman did not exhaust available administrative remedies before filing this action.[10]

---

[10] Although failure to exhaust is ordinarily an affirmative defense and an inmate is not required to plead that he has exhausted administrative remedies, an action may be dismissed upon the pleadings where failure to exhaust is apparent from the face of the complaint. *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 682 (4th Cir. 2005).

## A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2022). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Exhaustion must be accomplished *prior* to filing suit. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "The plain language of that statute makes exhaustion a precondition to filing an action in federal court. The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted); *see also Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016) ("Exhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint.").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required

procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

**B.**

Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures.[11] The OP requires that, prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. According to OP 866.1, the first stage of the informal complaint procedure is for the inmate to communicate his concerns to staff verbally. If the issue is not resolved or if the inmate is not satisfied with the resolution, he generally must document his good-faith effort using an informal complaint form. Once an inmate files an informal complaint form, it is logged in VACORIS, the VDOC's computer-based offender information management system, and the inmate is issued a receipt. Within 15 days of receipt of the informal complaint form, staff

---

[11] This OP is available to the public online at the VDOC's website. *See* Operating Procedures, Offender Management Programs, Offender Grievance Procedure 866.1, https://vadoc.virginia.gov/general-public/operating-procedures (last visited Aug. 24, 2022).

should respond to the informal complaint. If an inmate is not satisfied with the staff's response to the informal complaint, he may file a regular grievance, or if no response is given to the inmate within 15 days of the logging of the informal complaint form, the inmate may file a regular grievance, and he must attach the receipt of the informal complaint form to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman within five calendar days of receipt. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review.

For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal. Complete exhaustion of administrative remedies requires the filing of an informal complaint, a regular grievance that meets intake criteria, and at least a Level II appeal (in some instances a Level III appeal is also required).

## C.

Coleman admits in his affidavit attached to his complaint that he did not complete all steps of the exhaustion process prior to filing this action. (Coleman Aff. ¶ 41 [ECF No. 1-3].) Further, the grievances submitted by the parties show that although Coleman filed two informal complaints before filing this action, he did not file any regular grievances or appeals until after filing this action. Coleman's failure to exhaust is not excused by the fact that he filed suit prior to completing the exhaustion process in order to obtain a preliminary injunction.[12] As the Supreme Court has observed, the PLRA does not permit any exception to the exhaustion requirement for "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Specifically, courts have recognized that an inmate must still exhaust administrative remedies even before seeking a preliminary injunction. *See Shouse v. Ray*, No. 7:10cv61, 2010 U.S. Dist. LEXIS 103234, at *2–3 (W.D. Va. Sept. 28, 2010) (finding that inmate had not shown that he

---

[12] The court denied Coleman's motion seeking preliminary injunctive relief on February 28, 2022. (ECF No. 38.)

was likely to succeed on the merits when there was dispute as to whether he had exhausted administrative remedies); *Watkins v. Guilford Cnty. Sheriff's Dep't*, No. 1:06cv995, 2007 U.S. Dist. LEXIS 78264, at *14 (M.D.N.C. May 10, 2007) ("[A] plaintiff's failure to exhaust his administrative remedies bars relief on a motion for a preliminary injunction."). Moreover, Coleman has not alleged any facts showing that administrative remedies were not available to him.[13] *See Moore*, 517 F.3d at 725 ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). Rather, it is clear from the record that remedies *were* available to him, but he chose to skip this required step and file a § 1983 complaint instead. Because Coleman failed to exhaust available administrative remedies prior to filing this action, his claims against the defendants are barred under the PLRA.

## V.

For the reasons stated, the court will grant the defendants' motions to dismiss.[14]

The clerk is directed to send copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 26th day of August, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[13] In his response to the defendants' motion to dismiss, Coleman argues that he had exhausted remedies by filing emergency grievances on his claims. The filing of emergency grievances, however, is not a step in VDOC's exhaustion procedures. *See* VDOC OP 866.1.

[14] Because the court has granted the defendants' motions to dismiss, the court further concludes that Coleman is not entitled to judgment as a matter of law and, therefore, will deny his motion for summary judgment (ECF No. 26.)